UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                     :

BENEDETTA COSTANTINO,

                           Petitioner,

              -against-

U.S. CITIZENSHIP AND IMMIGRATION SERVICES;
LEON RODRIGUEZ, in his official capacity as Director,
U.S. Citizenship and Immigration Services;
PHYLLIS COVEN, in her official capacity as New York
District Director, U.S. Citizenship and Immigration
Services; JEH JOHNSON, in his official capacity as
Secretary, U.S. Department of Homeland Security; and
ERIC HOLDER, in his official capacity as United States
Attorney General,

                          Respondents.
-------------------------------------------------------------------X

No. 14cv08753 (AT) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE ANALISA TORRES, U.S.D.J.:**

      In this action, which has been referred to me for general pretrial supervision and to report

and recommend on dispositive motions, Petitioner Benedetta Costantino ("Petitioner") seeks the

Court's *de novo* review of the decision of the United States Citizenship and Immigration

Services ("USCIS"), denying her application to become a naturalized United States citizen.

Respondents USCIS, Leon Rodriguez, Phyllis Coven, Jeh Johnson, and Eric Holder (collectively

"the Government" or "Respondents") have filed a motion pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure for judgment on the pleadings affirming USCIS's decision to deny

Petitioner's application for naturalization.  Petitioner opposes Respondents' motion, and has

requested that, even if the Court does not agree that she was eligible for naturalization as of the

time of her application, it grant her *nunc pro tunc* relief, deeming her application filed as of a

later date, when any questions regarding her eligibility would purportedly be eliminated.

For the reasons set forth below, I respectfully recommend that Respondents' motion for judgment on the pleadings (Dkt. 16) be granted, that Petitioner's request for *nunc pro tunc* relief (Dkt. 20) be denied, and that the Petition be dismissed.

## BACKGROUND

### A.   Factual Background[1]

Petitioner is a citizen of Italy. (Petition for Review, dated Nov. 3, 2014 ("Pet.") (Dkt. 2), ¶ 3.) She married United States citizen Tom Grizzetti ("Grizzetti") on January 29, 2005 (*id.* ¶ 4), and became a lawful permanent resident of the United States on April 19, 2006 (*id.* ¶ 3). Petitioner and Grizzetti reside at 99 Jane Street, Apt. 5D, New York, NY 10014, and have two children who are United States citizens. (*Id.* ¶ 5.) Petitioner and her family, however, have frequently traveled abroad, and, in the timeframe relevant to this action, Petitioner was absent from the United States for significant stretches of time. (*See* Pet., Ex. 2 (Dkt. 2-2); *see also* Declaration of Christopher Connolly, dated Feb. 13, 2015 ("Connolly Decl."), Ex. A (Record of Proceedings ("ROP")) at 000093, 000100 (Dkt. 18-5).)

On August 9, 2013, Petitioner applied to become a United States citizen by filing a Form N-400[2] with USCIS. (Pet. ¶ 11.) Petitioner sought naturalization pursuant to Section 319(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1430(a), which, *inter alia*, provides that, during the three years immediately preceding filing for naturalization, a legal permanent resident spouse of a United States citizen must have resided continuously in the

---

[1] The facts set forth herein are taken from Petitioner's Petition for Review (Dkt. 2) and, in some instances, from the declarations submitted by the parties and the exhibits thereto. To the extent any facts are disputed, they are presented here in the light most favorable to Petitioner.

[2] A Form N-400 is an application to become a naturalized U.S. citizen. *See* http://www.uscis.gov/n-400 (last visited Apr. 29, 2015).

United States for the entire three years and have been physically present in the United States for at least half that time, *see* 8 U.S.C. § 1430(a); *see also* Pet. ¶ 11.

On September 24, 2013, USCIS notified Petitioner that her initial naturalization interview was scheduled for October 28, 2013.  (Pet. ¶ 12.)  Petitioner appeared at the interview, brought paperwork, and answered agency questions.  (*Id.*)  On December 14, 2013, Petitioner received notice from USCIS that her petition for naturalization had been denied on the ground that Petitioner had not met all of the requirements of Section 316(a) of the INA, 8 U.S.C. § 1427(a), a provision that – unlike Section 1430(a), the provision under which Petitioner applied for naturalization – requires legal permanent residents who are *not* married to United States citizens to have resided continuously in the United States for at least *five years* immediately preceding filing, and to have been physically present in the United States for half that time, *see* 8 U.S.C. § 1427(a); *see also* Pet. ¶ 13.

On January 15, 2014, Petitioner submitted a Form N-336,[3] requesting a hearing before an immigration officer to contest the denial of her application.  (Pet. ¶ 13.)  On June 2, 2014, Petitioner appeared at a hearing and clarified that she had applied for naturalization pursuant to Section 1430(a), rather than Section 1427(a), because of her status as a legal permanent resident spouse of a United States citizen.  (*Id.* ¶ 15.)  On July 12, 2014, USCIS acknowledged its error in applying Section 1427(a) instead of Section 1430(a) and vacated the original ground for denial.  (*Id.* ¶ 16.)  Simultaneously, however, USCIS again denied Petitioner's application, this time on the ground that Petitioner had failed to meet the physical presence requirement of Section 1430(a).  (*See id.*; *see also* Pet., Ex. 2.)

---

[3] A Form N-336 is a Request for a Hearing on the Decision in Naturalization Proceedings.  *See* http://www.uscis.gov/n-336 (last visited Apr. 29, 2015).

3

While Petitioner apparently did not contest that she had been physically absent from the United States for more than half of the days during the three-year period immediately preceding the filing of her application, she argued to USCIS that, under Section 334 of the INA, 8 U.S.C. § 1445(a) (which allows for the early filing of a naturalization application, where the applicant has not yet satisfied the continuous residence requirement of Section 1430(a), but expects to do so within three months of filing), she was entitled to file her application up to three months early, and did so. (*See* Pet., Ex. 2, at 2.)[4] Specifically Petitioner asserted that she took the benefit of early filing by 53 days, such that, according to her, her effective filing date was October 1, 2013, and the relevant period for assessing all aspects of her eligibility for naturalization effectively commenced three years prior to that date, on October 1, 2010. (*See id.*) Based on her claimed effective filing date, Petitioner argued that she was present in the United States for more than half of the days during the three-year period preceding that date, thereby satisfying Section 1430(a)'s physical presence requirement. (*See id.*) USCIS rejected Petitioner's arguments, finding that she was not entitled to take advantage of the early-filing option provided by Section 1445(a). (*See id.*)[5]

Upon rejecting the applicability of Section 1445(a) to Petitioner's application, USCIS proceeded to determine that Petitioner had failed to be physically present in the United States for at least half, or 548, of the days from August 9, 2010 to August 9, 2013 – the three-year period

---

[4] It appears, based on the USCIS Decision, that Petitioner made these arguments orally during the June 2 hearing. (*See* Pet., Ex. 2, at 2.) Petitioner additionally sent a letter to USCIS on August 15, 2014, further arguing this position. (*See* ROP at 000001-04.)

[5] Although this is not spelled out fully in the USCIS Decision, it appears that USCIS reasoned that Petitioner's period of continuous residence commenced in April 2006, when she became a lawful permanent resident, and that she had thus already had more than three years of continuous residence at the time she filed her naturalization application in August 2010. (*See id.* (noting, in connection with its consideration of the applicability of Section 1445(a), that Petitioner had "obtained [her] permanent residence on April 19, 2006").)

immediately preceding the filing of her application.  (*See id.*)  According to USCIS, Petitioner

was present in the United States for only 517 days during that time period, an insufficient

number of days to satisfy the physical presence requirement.  (*Id.*, at 3.)[6]

### B.   Procedural History

On November 3, 2014, Petitioner filed her Petition for Review in this Court pursuant to

8 U.S.C. § 1421(c), requesting review of the denial of her naturalization application.  (Dkt. 2.)

On January 16, 2015 Respondents answered the Petition (Dkt. 14), and, less than a month

later, moved for judgment on the pleadings in their favor, taking the position that USCIS had

correctly concluded that Petitioner was not entitled to file her application early under

Section 1445(a), and that she had failed to meet the physical presence requirement of

Section 1430(a) (*see* Notice of Motion, dated Feb. 13, 2015 (Dkt. 16); Memorandum of Law in

Support of Respondents' Motion for Judgment on the Pleadings, dated Feb. 13, 2015 ("Resp.

Mem.") (Dkt. 16); Connolly Decl.).

Petitioner filed an opposition to Respondents' motion on March 2, 2015, seeking

*nunc pro tunc* relief, in the event the Court disagreed with her construction of the relevant

---

[6] The USCIS Decision that was mailed to Petitioner on July 12, 2014 states that she was in the United States for "527 [days] during the statutory period" (ROP at 00013), but this appears to have been a typographical error, as the record of her travel reflected, and as Respondents now state in their brief, that she was in the United States for 517 days from August 9, 2010 to August 9, 2013 (*see* Memorandum of Law in Support of Respondents' Motion for Judgment on the Pleadings, dated Feb. 13, 2015 ("Resp. Mem") (Dkt. 17), at 7).  Specifically, the administrative record showed that Petitioner had traveled outside the United States from April 1, 2010 to October 1, 2010 (182 days, including 52 days during the 3-year period commencing August 9, 2010); from December 13, 2010 to March 2, 2011 (78 days); from May 2, 2011 to July 7, 2011 (65 days); from September 1, 2011 to December 1, 2011 (90 days); from March 1, 2012 to June 7, 2012 (97 days); from August 28, 2012 to October 7, 2012 (39 days); from October 16, 2012 to November 8, 2012 (22 days); from November 18, 2012 to December 26, 2012 (37 days); from February 2, 2013 to March 21, 2013 (45 days); from April 7, 2013 to May 21, 2013 (43 days); and from May 29, 2013 to June 10, 2013 (11 days).  (*See* Pet., Ex. 2 (Dkt. 2-2); *see also* ROP at 000093, 000100 (Dkt. 18-5).)

statutes. (*See* Memorandum of Law in Opposition to Motion for Judgment on the Pleadings and

in Support of Request for *Nunc Pro Tunc* Relief, dated Mar. 2, 2015 ("Pet. Mem.") (Dkt. 20)

(corrected filing); Declaration of John E. Schiltz in Support of Memorandum of Law in

Opposition to Motion for Judgment on the Pleadings and in Support of Request for *Nunc Pro*

*Tunc* Relief, dated Mar. 2, 2015 (Dkt. 21).)

On March 6, 2015, Respondents filed a reply (Reply Memorandum in Further Support of

Respondents' Motion for Judgment on the Pleadings, dated Mar. 6, 2015 (Dkt. 22)), reiterating

their initial position and opposing Petitioner's request for *nunc pro tunc* relief.

## DISCUSSION

I.   ## APPLICABLE LEGAL STANDARDS

A.   ### Rule 12(c) Motion for Judgment on the Pleadings

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are

closed – but early enough not to delay trial – a party may move for judgment on the pleadings."

Judgment on the pleadings is appropriate where "the movant establishes 'that no material issue

of fact remains to be resolved,'" *Guzman v. Astrue*, No. 09cv03928 (PKC), 2011 WL 666194, at

*6 (S.D.N.Y. Feb. 4, 2011) (quoting *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir.

1990)), and a judgment on the merits can be made "'merely by considering the contents of the

pleadings.'" *Id.* (quoting *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)).

Additionally, "[a] court may . . . consider documents that are attached to, incorporated by

reference in, or integral to the complaint." *Byrd v. City of New York*, No. 04cv01396, 2005 WL

1349876, at *1 (2d Cir. June 8, 2005).

As in a Rule 12(b)(6) motion (to dismiss for failure to state a claim), when evaluating a

Rule 12(c) motion, a court must accept all allegations in the complaint as true and draw all

reasonable inferences in favor of the non-moving party.  *See, e.g., Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Byrd*, 2005 WL 1349876, at *1; *General Elec. Capital Corp. v. Domino's Pizza Inc.*, No. 93cv5070 (PKL), 1994 WL 256776, at *2 (S.D.N.Y. June 2, 1994).  The issue before the court is not whether a plaintiff will ultimately prevail, but whether that plaintiff is entitled to offer more evidence in support of his or her claims.  *Schiappa, Sr. v. Brookhaven Science Associates, LLC*, 403 F. Supp. 2d. 230, 234 (E.D.N.Y. 2005).  Indeed, a claim may not be dismissed under Rule 12(c) unless "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003); *see also Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002).

**B.      Judicial Review of Naturalization Applications Under 8 U.S.C. § 1421(c)**

Pursuant to 8 U.S.C. §1421(c), a "person whose application for naturalization . . . is denied" subsequent to a hearing may seek judicial review of that denial before the United States district court for the district in which that person resides.  8 U.S.C. §1421(c).  "Such review shall be *de novo*, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing *de novo* on the application."  *Id.*

**C.      Requirements for Naturalization Under 8 U.S.C. § 1430(a)**

A legal permanent resident who is the spouse of a United States citizen is eligible for citizenship if he or she meets certain residence requirements, particularly, if he or she has maintained "continuous residence," *i.e.*, a permanent dwelling in the United States, during the entire three-year period preceding his or her application, and – for jurisdictional purposes – has lived in the state or district of filing for three months.  *See* 8 U.S.C. § 1430(a).  In addition, the applicant must be able to show that he or she has lived in marital union with his or her citizen spouse for the full three years prior to the application, and that he or she has been "physically

present" in the United States for at least half of the three-year period preceding the application. *See id.* Section 1430(a) states that all of these requirements must be met, in order for the applicant to qualify for naturalization under the statute;[7] *see also* 12 USCIS Policy Manual, U.S. Citizenship & Immigration Servs., Vol. 12, Part G, Ch. 3 (last updated Oct. 28, 2014) ("USCIS Policy Manual"), *available at* http://www.uscis.gov/policymanual/HTML/PolicyManual-Volume12-PartG-Chapter3.html (listing, at Ch. 3A, the criteria that an applicant must meet in order to be eligible for naturalization pursuant to Section 1430(a)).

### D.   Early Filing Under 8 U.S.C. § 1445(a)

Although all of the statutory requirements for naturalization must be satisfied before an applicant may become a citizen, Section 1445(a) allows an applicant to file his or her naturalization application in advance of satisfying the residence requirement.  8 U.S.C. § 1445(a); *see also* USCIS Policy Manual, Vol. 12, Part G, Ch. 3E.  Specifically, Section 1445(a) states: "In the case of an applicant subject to a requirement of continuous residence under section 1427(a) or 1430(a) of this title, the application for naturalization may be filed up to

---

[7] The statute reads, in relevant part:

> Any person whose spouse is a citizen of the United States . . . may be naturalized upon compliance with all the requirements of this subchapter . . .  if such person immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least three years, and during the three years immediately preceding the date of filing his application has been living in marital union with the citizen spouse . . ., and has been physically present in the United States for periods totaling at least half of that time and has resided within the State or the district of the Service in the United States in which the applicant filed his application for at least three months.

8 U.S.C. § 1430(a).

3 months before the date the applicant would first otherwise meet such continuous residence requirement." 8 U.S.C. § 1445(a).  In other words, a legal permanent resident applying for naturalization pursuant to Section 1430(a) may file for naturalization after continuously residing in the United States for two years and nine months, instead of waiting until the full three years of continuous residence have passed.  8 U.S.C. § 1445(a); *see also* 8 C.F.R. § 334.2(b).

"Although an applicant may file early" under Section 1445(a), "the applicant is not eligible for naturalization until he or she has satisfied the required three-year period of residence."  USCIS Policy Manual, Vol. 12, Part G, Ch. 3E.  Additionally, an applicant who wishes to take advantage of Section 1445(a) must have already satisfied all of the requirements for naturalization, except for the residence requirement, at the time of filing.  *See id.*; *see also* Instructions for Form N-400, Application for Naturalization (last updated March 22, 2012) ("Form N-400 Instructions"), *available at* http://www.ivac.org/citizensdrive_files/n-400instru-2012.pdf (last visited Apr. 29, 2015).

### E.    *Nunc Pro Tunc* Relief

In certain circumstances, generally where a court or administrative agency has committed an error in timing that, unless corrected, would create substantial prejudice to a party, the court may adjudicate a matter "*nunc pro tunc,*" such that the adjudication "is as if it were done at the time that it should have been done." *Edwards v. I.N.S.*, 393 F.3d 299, 308 (2d Cir. 2004); *see also id.* at 308-09 (noting that *nunc pro tunc* relief may be afforded "where an agency error would otherwise be irremediable, and where the plaintiff has been deprived of a significant benefit").  The doctrine that allows for a court to provide *nunc pro tunc* relief "is a 'far-reaching equitable remedy' applied in 'certain exceptional cases,' typically aimed at 'rectify[ing] any injustice [to the parties] suffered by them on account of judicial delay.'" *Iouri v. Ashcroft,* 464

F.3d 172, 182 (2d Cir. 2006) (quoting *Iavorski v. INS,* 232 F.3d 124, 130 n.4 (2d Cir. 2000) and *Weil v. Markowitz,* 829 F.2d 166, 175 (D.C. Cir. 1987)).

      In the immigration context, the purpose of the doctrine is to enable the court to return applicants "to the position in which they would have been, but for a significant error in their immigration proceedings." *Edwards,* 393 F.3d at 308-09.  In this context, courts have typically awarded *nunc pro tunc* relief where the applicant would otherwise be subject to the extraordinary harm of deportation, removal, or permanent exclusion from the United States. *See, e.g.*, *id.* at 310-11 (noting appropriateness of remedy where "agency error would otherwise result in an alien being deprived of the opportunity to seek a particular form of deportation relief"); *Harriot v. Ashcroft*, 277 F. Supp. 2d 538, 545 (E.D. Pa. 2003) (granting *nunc pro tunc* relief where "governmental failure to perform ministerial duties resulted in an Order of Deportation against a young man who was eligible for derivative citizenship"); *see also Azize v. Bureau of Citizenship & Immigration Servs.*, 594 F.3d 86, 89 (2d Cir. 2010) (remanding to District Court to make factual determinations necessary to decide whether *nunc pro tunc* relief was warranted, where petitioner alleged that his green card was improperly terminated).

      In most cases, mere delays in administrative action, without such severe attendant harm or a showing of affirmative misconduct by the government, have been held insufficient to warrant a judicial grant of *nunc pro tunc* relief. *See, e.g., INS v. Miranda,* 459 U.S. 14 (1982) (holding that an 18 month delay in processing an application for an immigration visa was not the type of government misconduct that warranted estoppel); *Panchishak v. U.S. Dep't of Homeland Sec.,* 446 F. App'x 361, 362-63 (2d Cir. 2011) (holding that a five-year delay in processing petitioner's adjustment of status application did not warrant *nunc pro tunc* relief because he was ultimately granted citizenship and could "still petition to bring his daughter to the United States,

albeit he [needed to] wait longer" than he otherwise would have); *Anderson v. Holder,* 382 F.

App'x 16, 17 (2d Cir. 2010) (declining to grant *nunc pro tunc* relief for delay in processing

petitioner's mother's naturalization application); *see also Rojas-Reyes v. INS,* 235 F.3d 115, 126

(2d Cir. 2000) (holding that "estoppel will only be applied upon a showing of 'affirmative

misconduct' by the government"); *Drozd v. INS,* 155 F.3d 81, 90 (2d Cir. 1998) (finding doctrine

of equitable estoppel to be unavailable against the government "except in the most serious of

circumstances").[8]

## II.   RESPONDENTS' MOTION FOR JUDGMENT ON THE PLEADINGS

### A.   Sufficiency of Petitioner's Naturalization Application

Respondents argue in their motion that, at the time she filed her application for

naturalization, Petitioner – regardless of whether she met the "continuous residence"

requirement – simply did not meet the "physical presence" requirement, and, therefore, her

application was properly denied.  This argument is persuasive.

### 1.   Petitioner's Continuous Residence

As a threshold matter, this Court notes that Petitioner's own position regarding the period

of her continuous residence is somewhat unclear.  On the one hand, Petitioner has informed this

Court that she married a United States citizen on January 29, 2005 (Pet. ¶ 4), that she became a

legal permanent resident on April 19, 2006 (Pet. ¶ 3), and that the "Grizzetti family has lived in

New York since 1999" – suggesting that, at least since the date that she joined that family, she,

too, has maintained residence here (Pet. ¶ 5).  Based on these alleged facts, it would appear that

---

[8] *See also Daniel v. The District Director of USCIS,* No. 14cv2060 (PAC) (SN), 2015
WL 1097375 (S.D.N.Y. Mar. 12, 2015) ("Absent adjudicative error, affirmative government
misconduct, or unreasonable delay, however, *nunc pro tunc* [relief] is not warranted."), *appeal
docketed,* No. 15-1260 (2d Cir. Apr. 21, 2015).

Petitioner may have maintained continuous residence in the United States since she became a legal permanent resident in 2006.[9] If so, then Petitioner would have satisfied the continuous residence requirement of Section 1430(a) on April 19, 2009 – three years after becoming a legal permanent resident – and, pursuant to Section 1445(a), she could have filed for naturalization up to three months in advance of that date, *i.e.*, as early as January 19, 2009, provided she met the other requirements of the statute.

On the other hand, this Court notes that Petitioner did not file for naturalization at that time, and she now asserts that she "satisfied the three-year continuous residence requirement on October 1, 2013" (Pet. ¶ 26), implying that, prior to October 1, 2010, there may have been one or more breaks in her continuous residence.[10] It may also be that Petitioner did not consider herself to be able to meet the continuous residence requirement until she could also satisfy the physical presence requirement, for a co-extensive three-year period. (*See* Discussion *infra* at Section II(A)(2).)

The Court, though, need not resolve the question of when Petitioner was able to satisfy the continuous residence requirement, as, regardless of the answer to that question, it is clear from the undisputed factual allegations of Petitioner's pleading that her application was properly rejected for failure to meet the physical presence requirement, as discussed below.[11]

---

[9] As set out above (*see supra* at n.4), this was apparently USCIS's view.

[10] Although Petitioner does not state this overtly, she may be implying in her papers that she considered her six-month absence from the United States from April 1 to October 1, 2010 to constitute a break in her continuous residence, *see* 8 U.S.C. § 1427(b); *see also* 8 C.F.R. § 316.5(c)(1), and that this is why she only claimed to satisfy the continuous residence requirement as of three years from that date, on October 1, 2013.

[11] Similarly, the Court need not reach Respondents' additional arguments that Section 1445(a) is only available to aid applicants when they are "first" able to meet the continuance residence requirement (*see* 8 U.S.C. § 1445(a) (providing that a naturalization

2.      **Petitioner's Physical Presence**

In addition to meeting the continuous residence requirement, Petitioner was required, separately, to satisfy the physical presence requirement of Section 1430(a), in order to have been eligible for naturalization. Specifically, the statute mandates that an applicant must be physically present in the United States "for periods totaling at least half" of the three years immediately preceding the filing of the application, *i.e.* 548 days out of that 1,096 day period. 8 U.S.C. §1430(a).

As already stated, Petitioner filed her application for naturalization on August 9, 2013. Respondents argue that, based on the language of Section 1430(a), the relevant time period for which the Court must evaluate the sufficiency of Petitioner's physical presence was the three-year period preceding that date. (Resp. Mem., at 6.) During that period, Petitioner was absent from the United States for 579 days, and, as noted above (*see supra* at n.5), she was only physically present in the United States for 517 days. (*Id.; see also* Pet., Ex. 2.) Respondents maintain that, due to her absences, USCIS correctly determined that Petitioner did not meet the physical presence requirement during the applicable statutory period. (*See* Resp. Mem., at 1-2, 6-7.)

---

application "may be filed up to 3 months before the date the applicant would *first* otherwise meet such continuous residence requirement") (emphasis added)). Respondents argue that, based on the date Petitioner established permanent residence, she should have been able to satisfy that requirement long before the date of her application, and that she was therefore no longer entitled to early filing (*see* Resp. Mem., at 7-8). Regardless of whether this is a correct reading of Section 1445(a), and regardless of whether Petitioner had sufficient breaks in her period of residence to render October 1, 2013 the "first" date by which she could have established continuous residence, any debate on these points is ultimately of no moment, as, even assuming Petitioner was still able to take advantage of early filing under Section 1445(a), she would still have needed, separately, to satisfy the physical presence requirement.

While conceding that she was absent for more than half the period between August 9,

2010 and August 9, 2013 (*see generally* Pet.; Pet. Mem.), Petitioner again contends that this is

not the relevant calculation.  Rather, as she did before USCIS, she takes the position that,

pursuant to Section 1445(a), she filed her application 53 days before the point when, in her view,

she had established continuous residence.  (*See* Pet. ¶¶ 26-28; Pet. Mem., at 1.)  Thus, she

contends that, despite the fact that she actually filed her application in August 2013, her effective

filing date should be considered to have been October 1, 2013.  She further argues that, once

established, this effective filing date must be used for *all* purposes, including for the purpose of

evaluating whether she met the physical presence requirement.  (*See* Pet. Mem., at 3 (arguing

that Section 1445(a) "alter[s] the relevant time period of the *entire* naturalization application, not

just the continuous residence requirement" (emphasis added).)  As to this point, Petitioner

particularly argues that the "physical presence" requirement is a "sub-requirement" of the

continuous residence requirement (Pet. ¶ 23), such that, if the time frame for evaluating her

continuous residence shifts forward under Section 1445(a), then the time frame for evaluating

her physical presence must shift with it (*see* Pet. Mem., at 5 (positing that "[b]ecause the

physical presence requirement asks whether an applicant has been physically present in the

United States for at least half of the minimum period of continuous residence, if the relevant

continuous residence period is altered, so is the coextensive physical presence period.").)

Petitioner argues that, if her proposed filing date of October 1, 2010 were accepted, then she

would have been present in the United States for 558 days during the three-year period preceding

that date,[12] thereby satisfying Section 1430(a)'s physical presence requirement.  (*Id.* ¶ 28.)

---

[12] Apart from the dates noted above (*see supra* at n.5), Petitioner was also absent from the
United States from September 7-17, 2013, and she departed from the United States again on
September 30, 2013 (*see* ROP 000003).

Not only has Petitioner offered no statutory, regulatory, or case-law support for the statutory construction she urges on the Court, but it is at odds with the plain language of the relevant statutes and the applicable agency guidelines.

First, based on the text and structure of Section 1430(a), the time period during which each of three separate and independent requirements must be satisfied – continuous residence, physical presence, and living in marital union – is the three years *immediately preceding filing*. That each of these requirements are attached to the same time frame does not mean that the requirements are attached to one another, and, based on the grammatical construct of the statute, they are not. (*See* Discussion *supra* at Section I(C); *see also* 8 U.S.C. § 1430(a) (listing each of the sections requirements in the conjunctive).)  Thus, under Section 1430(a), the question of whether an applicant has met the physical presence requirement turns not on whether the applicant was present in the United States for a minimum number of days *during the period of continuous residence*, but rather on whether the applicant was physically present here for at least half of the three-year period immediately preceding filing.

Second, Section 1445(a), on its face, allows for early filing only in the limited circumstance where an applicant has not yet met the "continuous residence" requirement of Section 1430(a). *See* 8 U.S.C. §1445(a) (allowing an applicant who is subject to "*a requirement of continuous residence*" under Section 1430(a) to file her application for naturalization "up to 3 months before the date the applicant would first otherwise meet such *continuous residence requirement*" (emphases added)).  Nothing in Section 1445(a) states that the separate, physical presence requirement of Section 1430(a) need not be met as of the date of actual filing, and the Court should not read language into a statute that could have been included by Congress, but was not, and that would change the statute's meaning.

15

Case 1:14-cv-08753-AT-DCF   Document 23   Filed 05/11/15   Page 16 of 25

Third, the applicable regulations echo that an applicant for naturalization may file his or her application prior to the satisfaction of the applicable *residence* requirement, and nowhere suggest that the application may be filed prior to the satisfaction of the *presence* requirement. *See* 8 C.F.R. § 310.2 (stating that "USCIS shall accept an application for naturalization from an applicant who is subject to a continuous residence requirement . . . as much as three months before the date upon which the applicant would otherwise satisfy such *continuous residence* requirement"); 8 C.R.F. § 334.2 (stating that "[a]n application for naturalization may be filed up to 90 days prior to the completion of the required period of *residence*, which may include the three-month period of residence required to establish jurisdiction . . .").)

Fourth, both the USCIS Policy Manual and the instructions for the application form specify that all other requirements of Section 1430(a), apart from the residence requirement, must be satisfied at the time of the application. *See* USCIS Policy Manual, Vol. 12, Part G, Ch. 3E (stating that, while an applicant may file up to three months before satisfying her continuous residence requirement, "[a]ll other requirements for naturalization must be met *at the time of filing*" (emphasis added)); *see also* Form N-400 Instructions (stating: "[Y]ou may apply for naturalization up to 90 days before you meet the 'continuous residence' requirement. You must meet all other requirements *at the time that you file your application* with USCIS." (emphasis added)).[13] If the other requirements of Section 1430(a) would not have to be met until sometime after the actual filing, these agency instructions would be meaningless.

_____

[13] On September 13, 2014, approximately one month after Petitioner filed her application, the Form N-400 instructions were updated to clarify this point further:

> "Applicants filing up to 90 days before meeting the continuous residence requirement must still meet all other requirements for naturalization at the time of filing the Form N-400. For example, an applicant filing under section 319(a) of the INA must meet all

Petitioner seems to suggest that any construction of Sections 1430(a) and 1445(a) that could result in a separation of the three-year periods used for evaluating continuous residence and physical presence would be confusing and unworkable.  (*See* Pet. Mem., at 5 n.2 (arguing that such a separation would create an "x-year" period governing all of the application requirements except for continuous residence).)  In reality, though, it would be less confusing if USCIS, when applying Section 1445(a), continued to evaluate physical presence for the same, clearly-defined period as delineated under Section 1430(a) – *i.e.*, the three-year period preceding the actual application date – than it would be to alter that time period, as an applicant's satisfaction of the physical presence requirement would be known and determinable at the time of the application.  This would leave open, for later determination, only the question of whether the applicant was ultimately able to establish residence, as separately required under the statute.

Finally, Petitioner's repeated assertion that, in its denial of her application, USCIS itself took the position that continuous residence and physical presence are necessarily linked to the same time period (*see, e.g.*, Pet. ¶ 24; Pet. Mem., at 5) is not based on a fair reading of the USCIS decision.  In its decision, USCIS did state that "[a]n applicant for naturalization is generally required to have been physically present in the United States for at least half the time for which his or her continuous residence is required."  (Pet., Ex. 2 at 2.)  This is unquestionably

_____

other requirements as the spouse of a U.S. citizen at the time of filing."

*See* Instructions for Application for Naturalization, Dept. of Homeland Security, U.S. Citizenship & Immigration Servs., at 3 (last updated Sept. 13, 2013) ("Updated Form N-400 Instructions"), *available at* http://www.uscis.gov/sites/default/files/files/form/n-400instr.pdf (last visited Apr. 29, 2015).  While the Updated Form N-400 Instructions are even more explicit, the Form N-400 Instructions that were available at the time Petitioner filed her application were also clear that an applicant wishing to benefit from Section 1445(a) would need to meet all requirements, except for continuous residence, at the time of filing.

a correct statement, as, in most cases, the time period for which continuous residence and physical presence must be evaluated will indeed be the same three-year period. Having found that Petitioner was not entitled to early filing under Section 1445(a), however, USCIS never needed to address in its decision – and did not address – whether that Section, if applicable, would operate to adjust the period for the assessment of physical presence, as well as continuous residence. In any event, the Court must review the USCIS decision *de novo*, *see* 8 U.S.C. §1421(c), and, for the reasons discussed above, this Court concludes that, regardless of whether an applicant for naturalization may be entitled, under Section 1445(a), to file in advance of satisfying the continuous residence requirement, that applicant must, in any event, be able to satisfy the separate, physical presence requirement as of the applicant's actual filing date.

Accordingly, I recommend that the Court find that the appropriate time period to evaluate whether Petitioner satisfied the physical presence requirement was from August 9, 2010 to August 9, 2013 – the three-year period immediately preceding her filing date. I further recommend that the Court find that Petitioner was not physically present in the United States for at least half of that period, such that she was not entitled to naturalization on the basis of the application she filed.

**B.      Petitioner's Request For *Nunc Pro Tunc* Relief**

Petitioner further argues that, should the Court accept Respondents' interpretation of the relevant statutory law, then the Court should grant her what she characterizes as "*nunc pro tunc* relief*," essentially deeming her application to have been filed on October 1, 2010. (*See* Pet. Mem., at 8-17.) According to Petitioner, such relief should be made available to her because the agency's initial error in denying her application based on the wrong statute and then requiring a hearing – when, in her view, the agency should have immediately denied her application if, in

fact, it was insufficient – deprived her of the opportunity to refile on October 1, 2010, when, she

claims, she would have been entitled to naturalization. (*See id.*, at 14.) Further, Petitioner

contends that she cannot now refile her application "without substantial delay, cost, and hardship

to her and her family" (*id.*, at 17), presumably because she has again been absent from the United

States and/or has plans to be absent, to the degree that it would be difficult for her, at least in the

near future, to meet the Section 1430(a) requirements.

Petitioner's argument that the Court should deem her to have filed her application on a

date later than when she actually filed it is flawed for several reasons. As a threshold matter,

given that Petitioner is not looking for the Court to adjust the date of the USCIS determination –

but rather to change the date of her *own* filing – it is not even clear that the doctrine that allows

for *nunc pro tunc* adjudications would apply to her situation. *See Petition of Di Franco*, 339 F.

Supp. 414, 414 (S.D.N.Y. 1972) ("[I]t is not the function of a *nunc pro tunc* order to antedate the

actual performance of an act, to supply facts which never existed, or to embody a fiction that

something which never happened did actually occur."). In any event, on the record presented,

this is not a case that, either because of irremediable prejudice or governmental misconduct,

would warrant the relief that Petitioner seeks.

As for prejudice, this Court notes that, if Petitioner is denied the requested relief, she

would not be removed from the United States or denied entry. Rather, she would remain a

lawful permanent resident. Although Petitioner contends that she would suffer hardship if forced

to reapply for naturalization, any such hardship would merely be a consequence of her personal

decisions to spend substantial periods of time outside the United States, and she would remain

free to reapply at any point when she could satisfy Section 1430(a). At bottom, the burden she

would face in having to reapply – *i.e.*, the deprivation of time that she would otherwise be able to

spend with her husband, who works abroad, and her children, who apparently now attend school in Italy (*see* Pet. Mem., at 17) – is not sufficiently severe to justify a judicial alteration of her application date, even if the Court has the equitable power to award such relief.  *See, e.g.,* *Panchishak* 446 F. App'x at 362-63 (holding that a delay in adjudication of petitioner's adjustment application did not rise to the level of injustice warranting *nunc pro tunc* relief since it did not deprive him of the opportunity to become a U.S. citizen).

In addition, Petitioner has not demonstrated that judicial action is necessary here to address governmental malfeasance, or even to correct a significant error in her immigration proceedings.  Petitioner points to three purported agency errors as justification for why she should be granted the relief she seeks (*see* Pet. Mem., at 10-17), but, as shown below, none of these supposed errors warrants an equitable remedy.

### 1.  <u>Adequacy of Notice of the Early-Filing Requirements</u>

Petitioner first argues that, if, in fact, she was not entitled to take advantage of early filing under Section 1445(a) and thereby to have her physical presence measured by reference to a later date, then she was misled by the agency and otherwise would have acted differently.  (*See* Pet. Mem., at 10 (arguing that, "but for the agency's misleading regulations, [Petitioner] never would have filed her application early in the first place").)  While this Court agrees with Petitioner's assertion that "an agency 'cannot reasonably expect applications to be letter-perfect when . . . its instructions for those applications are incomplete, ambiguous or improperly promulgated'" (Pet. Mem., at 11 (quoting *Salzer v. F.C.C.*, 788 F.2d 869 (D.C. Cir. 1985))), here, Petitioner had sufficiently clear instructions regarding the need to satisfy the physical presence requirement of Section 1430(a) prior to the date that she actually filed her application.

On this issue, this Court notes that, as set out above, nothing in either the governing statute or the pertinent regulations suggest that an applicant may use Section 1445(a) to shift the period for which physical presence must be satisfied. (*See* Discussion *supra* at Section II(A)(2).)

Further, as also set out above, both the USCIS instructions that were in effect at the time Petitioner filed her application and the USCIS Policy Manual left little, if any, room for doubt as to whether the physical presence requirement had to be satisfied at the time of filing. *See* Form N-400 Instructions (stating: "[Y]ou may apply for naturalization up to 90 days before you meet the 'continuous residence' requirement. You must meet all other requirements at the time that you file your application with USCIS."); USCIS Policy Manual, Vol. 12, Part G, Ch. 3E (stating: "The spouse of a U.S. citizen filing for naturalization on the basis of his or her marriage may file the naturalization application up to 90 days before the date he or she would first meet the required three-year period of continuous residence. . . . All other requirements for naturalization must be met at the time of filing."). In addition, USCIS provided an "early filing calculator" to assist applicants, and that calculator also provided adequate notice. *See* USCIS Early Filing Calculator (last reviewed/updated May 11, 2011), *available at* http://www.uscis.gov/early-filing-calculator (stating that: "The information in this part ONLY relates to your time as a permanent resident if you file under Section [1430(a)]. All other eligibility requirements MUST be met at the time of filing."). Thus, if Petitioner had been confused by the fact that the statute and regulations did not specifically mention whether early filing was available to an applicant where the physical presence requirement had not yet been satisfied, she could have turned to multiple, publicly available explanations of the relevant provisions to seek clarification.

2.      **Timeliness of Denial of Petitioner's Application**

Second, Petitioner urges that, if her application was defective, then it should have been

dismissed *immediately*, based on what she claims is the dictate of an internal Immigration and

Naturalization Service Policy Memorandum, which instructs field officers to ensure that "all

statutory requirements are met at the time of the submission of the application." (*See* Pet. Mem.,

at 12-15.)  More particularly, the memorandum directs officers that they should "immediately

begin screening applications" and reject those that are filed too early, because they are filed prior

to the "ninety (90) day window of Section 334(a)." (*Id.*, at 13.)  Petitioner argues that, had

USCIS dismissed Petitioner's application before calling her in for an interview, she would have

remedied her error immediately and filed an "indisputably proper" application. (*Id.*, at 14.)

Because her application was not initially rejected, and because she was, instead, informed that "a

complete review of her application had been performed and that her case had been forwarded for

interview" (*id.*), Petitioner contends that she had no reason to suspect that she faced a problem

with the physical presence requirement.  As a result, she traveled abroad with her family during

the time between her interview and the denial of her application, apparently adding enough days

of physical absence to affect, negatively, any new determination of her eligibility for

naturalization. (*See id.*, at 17.)

The fact that Petitioner did not receive an "immediate" determination of her application is

not, however, tantamount to governmental misconduct, much less serious misconduct; rather, the

most Petitioner is describing here is undue delay, which, as noted above, is itself insufficient to

justify *nunc pro tunc* relief.  *See Anderson v. Holder*, 382 F. App'x 16, 17 (2d Cir. 2010)

(declining to grant *nunc pro tunc* relief for delay in processing petitioner's mother's

naturalization application); *Rojas-Reyes v. INS,* 235 F.3d 115, 126 (2d Cir. 2000) (holding that

"estoppel will only be applied upon a showing of 'affirmative misconduct' by the government");

*INS v. Miranda,* 459 U.S. 14, 19, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982) (holding that delays by

the government in processing an immigration application did not qualify as affirmative

misconduct); *Drozd v. INS,* 155 F.3d 81, 90 (2d Cir.1998) (holding that the doctrine of equitable

estoppel is not available against the government "except in the most serious of circumstances").

### 3.    Allegedly "Suspect" Grounds for Agency Action

Finally, Petitioner argues that "the agency erred, and significantly prejudiced [Petitioner],

by initially denying her application on patently suspect grounds." (Pet. Mem., at 15.) USCIS

itself acknowledged that it made an error by initially evaluating Petitioner's application under

Section 1427(a) instead of Section 1430(a). USCIS corrected this error, however, within six

months of Petitioner's bringing it to the agency's attention, and Petitioner has not suggested that

the error was made intentionally. Moreover, USCIS rightly determined that Petitioner was not

eligible for naturalization, even if it initially did so on the wrong ground, rendering the error

inconsequential, at least in its substance, at the time it was made. *See, e.g., Edwards,* 393 F.3d at

311, n.15 ("[A]gency error would not 'result' in an alien being deprived of the opportunity to

seek deportation relief where the alien would have independently been barred *at the time* of the

error from applying for the form of relief at issue.") (emphasis in original). Once again, the most

that Petitioner can complain about here is the timing of USCIS's decision-making process, but

that is not enough to "state a plausible claim for *nunc pro tunc* relief." *Panchishak* 446 F. App'x

at 362 (affirming a denial of *nunc pro tunc* relief, where an agency error resulted in a delay for

petitioner to obtain citizenship and petition to bring his daughter into the United States).

As both Petitioner's primary and alternate arguments fail, and as "it appears beyond

doubt that [Petitioner] can prove no set of facts in support of [her] claim which would entitle

[her] to relief," *Deravin*, 335 F.3d at 200, Respondents are entitled to judgment on the pleadings in their favor.

## CONCLUSION

For all of the foregoing reasons, I respectfully recommend that Respondents' Motion for Judgment on the Pleadings (Dkt. 16) be granted, that Petitioner's request for *nunc pro tunc* relief (Dkt. 20) be denied, and that the Petition be dismissed in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Analisa Torres, United States Courthouse, 500 Pearl Street, Room 2210, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Torres. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v.*

*Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d

Cir. 1983).

Dated:  New York, New York
       May 11, 2015

Respectfully submitted,

 

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Hon. Analisa Torres, U.S.D.J.

All counsel (via ECF)